**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DANIEL BEHAR CALZADO, on behalf of himself and others similarly situated,

Plaintiff,

v.

HANDI-FOIL CORP.

Defendant.

Case No.: 6:26-cv-06442-MAV

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Daniel Behar Calzado, ("Plaintiff"), by and through his counsel, brings this Class Action Complaint against Defendant Handi-foil Corp. ("Defendant" or "Handi-foil"), on behalf of himself and all other similarly situated, and alleges upon personal knowledge as to his own actions, and upon information and belief as to his counsel's investigations and all other matters, as follows:

## SUMMARY OF THE ACTION

1. This class action challenges Defendant's false and deceptive practices in the labeling, marketing and sale of its disposable aluminum foil pans and containers (the "Products") as "Made in the USA." Specifically, during the relevant class period, Defendant has made unqualified "Made in the USA" claims for the Products that mislead reasonable consumers.

2. Defendant markets and sells the Products with representations that they are Made in the USA. These representations lead reasonable consumers to believe that the

Products are comprised of material that is all or virtually all made in the United States when in fact the Products are comprised of virtually all foreign-derived material.

3. Defendant provides no disclaimer or qualification indicating that its "Made in the USA" Products are comprised of material that is derived outside the United States.

4. Plaintiff and other consumers have paid a price premium for the Products based on the foregoing false and misleading Made in the USA claim. Had they known the truth that the Products are not made of material that is all or virtually all derived from within the United States, they would not have purchased them or would have paid significantly less for them. As a result, they have been financially injured as a direct result of Defendant's labeling and advertising

5. Plaintiff brings this class action lawsuit on behalf of himself, and all others similarly situated.

6. Plaintiff, on behalf of himself and other consumers, is seeking damages, restitution, and all other remedies the Court deems appropriate.

**<u>JURISDICTION AND VENUE</u>**

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Western District pursuant to 28 U.S.C. §1391.

## PARTIES

9. Plaintiff is a resident of Monroe County. On October 29, 2025, Plaintiff purchased a two pack of Handi-Foil 13 x 9 Cake Pans & Lids from Tops Friendly Markets in Rochester, New York. While in New York, and prior to and at the time of purchasing his Product, Plaintiff saw and relied upon the representations that the Products are "MADE IN THE USA." Based on these representations, Plaintiff reasonably believed the Products were made in the United States and that all, or virtually all, of the materials in the Products were sourced from the USA. Plaintiff would not have purchased the Product, or would have paid significantly less for them, if Plaintiff had known the made in the USA claim was false and misleading. In making his purchase, Plaintiff paid a price premium for products that were made in the USA. Plaintiff has therefore suffered injury in fact and has lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein.

10. Defendant Hand-foil Corp. is a corporation organized under the laws of Illinois, with a principal place of business located at 135 East Hintz Road, Wheeling, IL 60090. Defendant is engaged in the manufacturing, processing, distributing, advertising, marketing and selling of the Products to consumers nationwide, including New York. Defendant has also sold the Products in this District.

## STATEMENT OF FACTS

11. Defendant is responsible for the manufacturing, processing, distributing, advertising, marketing and selling of the Products at issue in this case.

12. Defendant sells the Products in national supermarket chains such as Tops Friendly Markets, Stop & Shop and ShopRite, and in other major retail locations such as Walmart and Target.

13. During the relevant class period, Defendant has sold the Products with unqualified Made in the USA claims. These unqualified representations include "MADE IN THE USA" next to an American flag and "MADE IN" atop an American flag:







MADE IN
THE USA
handi-foil
Three Heavy Duty
Pie Pans
MADE IN
8 3/4 in. dia. x 1 5/32 in. 22.2 cm dia. x 2.9 cm


MADE IN
THE USA
0 52092 22018 7
22018
Handi-foil Corp.
Wheeling, IL 60090 U.S.A.
www.handi-foil.com
Rinse &
Recycle
cook-n-carry
MADE IN
Multiple plastic lids may stick together.
Plastic lids not for oven use.
handi-foil
with Lids
5 Mini Loaf Pans & Lids
5 23/32 in. x 3 5/16 in. x 1 7/8 in.
14.5 cm x 8.4 cm x 4.7 cm


MADE IN THE USA
iChef
INNOVATIVE ALUMINUM
BY handi-foil
cook-n-carry
& Serve
Traditional
& Elegant Style
Easy Travel with
Snap On Dome Lids
MADE IN
All Purpose
13 x 9 Cake Pan
with Lid
32.4 cm x 22.7 cm x 4.8 cm


CrispBake
for better baking
by handi-foil
MADE IN
Dual Layer &
Insulated
Promotes Evenly
Baked Cookies
Allows Air and
Heat to Circulate
Two Cookie Sheets
38.3 cm x 26.2 cm x 1.4 cm




14. Defendant's labeling would lead any reasonable consumer to believe that the Products are made in the USA.

15. These Made in the USA representations were presented to consumers without any accompanying qualification, disclaimer or explanation regarding the origin of the products components or raw materials.

16. These representations are sufficiently similar across all the Products and lead reasonable consumers to believe that all or virtually all aspects of the Products – including raw materials, components and manufacturing process – originate from and occur within the United States.

17. Unbeknownst to consumers, the Made in the USA representations are false and misleading because the Products are not all or virtually all made of materials originating

from the United States. Rather, the opposite is true, as most aluminum in Defendant's supply chain is foreign-derived.

18. The primary input Defendant uses to manufacture the Products is aluminum roll coils, which Defendant does not make itself but instead purchases from its domestic coil suppliers: Gränges Americas, Inc. and Novelis Corporation. A photo of the aluminum roll coils Defendant uses to manufacture the Products is below:



19. At Defendant's facilities in Illinois, the coils are unrolled, pressed, and "stamped" into the shape of a pan, with the by-product being excess (i.e., scrap) aluminum. That scrap aluminum is generally sold back to Defendant's domestic coil suppliers to be melted down and reused for future coils as "recycled" aluminum.

20. Aluminum roll coils are made from one or both of primary aluminum or recycled aluminum. Because bauxite is not available at commercial-scale in the United States, primary aluminum must be foreign-derived. Moreover, foreign-derived aluminum is pervasive even within Defendant's domestic coil suppliers' stock of recycled aluminum.

21. Specifically, to create primary aluminum, a powder-like substance called alumina is extracted from bauxite, a naturally occurring sedimentary rock. Bauxite is a necessary raw material for aluminum production. Although bauxite had been commercially mined in the United States for many years, there are no longer domestic mines in the United States with sufficient amounts of bauxite in the proper metallurgical grades to manufacture primary aluminum on a commercial scale, nor have there been for decades. "Given bauxite's current unavailability in the United States, contemporary primary aluminum is necessarily foreign-derived." *Osdoby v. Handi-Foil Corp.*, 2026 WL 388606, at *2 (E.D.N.Y. Feb. 12, 2026).

22. Once extracted from bauxite, alumina is refined into aluminum roll coil. To create recycled aluminum, domestic coil suppliers melt down post-consumer scrap aluminum and post-industrial scrap aluminum (from manufacturers like Defendant) into molten liquid aluminum that then undergoes the remaining steps in the refining process. Defendant makes pans both from aluminum roll coils made exclusively from recycled scrap aluminum that is obtained from sources within the United States (Handi-foil's "Eco-Foil" product line) and from a combination of recycled scrap aluminum and primary aluminum.

23. Beyond the fact that scrap aluminum (both post-consumer and post-industrial) contains a high percentage of foreign-derived aluminum (due to bauxite's unavailability), domestic coil suppliers also import and utilize enormous amounts of primary aluminum:

> which is then re-incorporated into their recycled aluminum stock through the scrap process… Handi-Foil's chief operations officer estimated that its non-Eco-Foil pans are composed of 50-80% recycled scrap aluminum and 20-50% primary aluminum." *See, Osdoby*, 2026 WL 388606, at *3.

> This means that the post-industrial scrap aluminum that domestic coil suppliers purchase back from [Handi-foil] must necessarily contain a high proportion of foreign-derived aluminum. That aluminum, as well as the scrap from other customers, is continuously re-incorporated into the domestic coil suppliers' recycled aluminum supply.

*See, Osdoby*, 2026 WL 388606, at *3-4.

24. A substantial amount of the scrap is itself made from foreign-derived aluminum, given both foreign-derived aluminum's prevalence in the market and that the domestic coil suppliers utilize imported aluminum and primary aluminum to manufacture coils for other customers. "Thus, not only is the domestic coil suppliers' stock of recycled aluminum predominantly foreign-derived, but foreign-derived aluminum and primary aluminum (which is necessarily foreign-derived) is continuously incorporated (and re-incorporated) back into it." *See, Osdoby,* 2026 WL 388606, at *3

25. Consequently, regardless of whether the Products are made of primary aluminum, recycled aluminum, or both, "the incorporation of foreign-derived aluminum is pervasive systemwide throughout Handi-Foil's products." *See, Osdoby*, 2026 WL 388606, at *6.

26. Plaintiff purchased the Products because of Made in the USA labeling and would not have done so had he known that the Products contained foreign-derived aluminum.

27. Defendant's failure to qualify its Made in the USA claim, despite knowing that not all of the materials are made and sourced within the United States, is false and misleading and violates the FTC guidelines codified at 16 C.F.R. § 323.2.

28. Under 16 C.F.R. 323(a), a Made in the USA claim is:

> any representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.

29. Examples of examples of express "Made in USA" claims include, but are not limited to, "Made in USA," "Our products are American-made," "USA," "Manufactured in USA," or "Built in USA."

30. Examples of implied claims include, but are not limited to, US. Symbols or geographic references like U.S. flags, U.S. maps, or references to U.S. locations of headquarters or factories.

31. Pursuant to the FTC guidelines, the central requirement for a product to be labeled and marketed as made in the USA is that "all or virtually all" of the components of the product are made and sourced in the United States. "All or virtually all" means that all significant parts and processing that go into the product must be of U.S. origin. "In other words, where a product is labeled or otherwise advertised with an unqualified claim, it should contain only a de minimis, or negligible, amount of foreign content. That is, the product should *contain no – or negligible* – foreign content." *See*, Federal Trade Commission, Complying with the Made in The USA Standard (December 1998), http://www.business.ftc.gov/documents/bus03-complying-made-usa-standard.; https://www.federalregister.gov/documents/2021/07/14/2021-14610/made-in-usa-labeling-rule (emphasis added).

32. Specifically, the FTC considers it a deceptive to label a product as "Made in the United States" or with substantially similar representations unless (1) the final assembly or processing of the product occurs in the United States, (2) all significant processing that

goes in the product occurs in the United States, ***and*** (3) all or virtually all ingredients and components of the product are made and sourced in the United States. 16 C.F.R. § 323.2.

33. Thus, even if final assembly of the Products takes place in the United States, Defendant fails to disclose that not all or virtually all raw materials and components of the products are made and sourced in the United States.

34. The FTC itself includes in its regulations a reasonable consumer's interpretation of an unqualified Made in the USA claim, developed after years of analysis of consumer perceptions regarding Made in the USA. 16 CFR 323, 86 FR 37022. The FTC has explained in its July 2021 codification of the Made in the USA Labeling Rule that the "'all or virtually all' standard accurately represents current consumer perception regarding unqualified MUSA claims" and that "consumer perception testing has consistently shown consumers expect products labeled as MUSA to contain no more than a *de minimis* amount of foreign content." *Id.*

35. The FTC has gone on to give examples of deceptive conduct arising from the foreign content in products with "Made in USA" claims, including but not limited to the following:

> **Example 1:** A company produces watches at a plant in Nevada using mostly U.S. parts and labor. All watches include movements, which are the parts that allow the watch to keep time. The company uses inexpensive Swiss movements in its watches. Movements account for a small proportion of the costs to make the company's watches, but without the movements, the watches can't tell time. Because movements are essential to the watches' function, an unqualified Made in USA claim is likely deceptive.
>
> **Example 2:** A table lamp is assembled in the U.S. from American-made brass, an American-made Tiffany-style lampshade, and an imported base. The base accounts for a small percent of the total cost of making the lamp. An

> unqualified Made in USA claim is deceptive for two reasons: The base is not far enough removed in the manufacturing process from the finished product to be of little consequence and it's a significant part of the final product.

36. Raw materials and components are also included in the "all or virtually all" analysis. The FTC has provided the following example to guide marketers:

> **Example 3**: If the gold in a gold ring is imported, an unqualified Made in USA claim for the ring is deceptive. That's because of the significant value the gold is likely to represent relative to the finished product, and because the gold — an integral component — is only one step back from the finished article. By contrast, consider the plastic in the plastic case of a clock radio otherwise made in the U.S. of U.S.-made components. If the plastic case was made from imported petroleum, a Made in USA claim is likely to be appropriate because the petroleum is far enough removed from the finished product, and is an insignificant part of it as well.

37. These unqualified representations are material to Plaintiff and other reasonable consumers. Consumers attach importance to such country-of-origin claims, believing that products that are made in the USA support domestic industry, are of higher quality, and align with patriotic or ethical values. Accordingly, the "Made in the USA" claims are likely to – and in fact did – affect consumers' purchasing decisions and command price premiums.

38. In fact, in 2020 when the FTC conducted a workshop and called for public comment on Made in the USA labeling, one comment noted that Consumer Reports testing found that 80% of consumers prefer to buy American products. Similarly, another comment reported that 2018 testing found that 92% of survey respondents had a favorable view of manufactured goods in America.

39. Indeed, Defendant's own CEO acknowledged the importance of the Made in the USA labeling as evidenced by an internal email regarding the release of orders that

includes a line stating the Handi-foil CEO "wanted them ASAP for the Made in the USA label." *See*, *Osdoby*, 2026 WL 388606, at *4. In another internal email to its sales representatives, Defendant emphasized the importance of ensuring its customers were aware of the Made in USA claim and stated: "We are updating our labels to better reflect that our products are Made in the USA." *See*, *id.* Defendant greatly expanded its Made in the USA labeling in 2020.

40. Defendant sells its Products at higher prices than those of competitors who label and market properly. For example, a ten-pack of Avantix Aluminum Half Size Steam pans sold next to Handi-Foil pans at ShopRite sells for $5.99– or .60 cents per pan. Avantix pans are labeled "Made in Korea":



41. A 10 pack of similar sized Handi-foil Half Size Steam pans sells for $8.99 or 89 cents per pan.

42. Handi-foil is able to charge .29 cents more per pan -- a 67% premium -- because it represents itself as being made in the USA. As the following sample Walmart customer reviews demonstrate, it is important to consumers to purchase Made in USA products:






https://www.walmart.com/reviews/product/16451271. Handi-foil is exploiting consumers' desires to buy genuinely made in the USA products.

43. Consumers are particularly vulnerable to these deceptive and fraudulent practices. Consumers cannot be expected to possess knowledge of the true origin of a product. Instead, consumers understandably rely upon a company's marketing and labeling, as they should.

44. Defendant misled and continues to mislead consumers about the source of the Products. The overall effect of the Handi-foil brand is to lead consumers to believe that the Products are made in America when in fact they are not, as virtually all the materials comprising the Products are foreign-derived.

45. Despite the undisputedly foreign derivation of the aluminum in the Products, Defendant claims that the Products are MADE IN THE USA and utilizes large capital letters and prominent American flags to do so.

46. Handi-foil's deceptive labeling and marketing is particularly egregious in that it involves products integral to the preparation and preservation of food.

47. Handi-foil's opportunistic labeling and marketing leaves the overwhelming impression that the Products are made in the USA. The law is designed to protect consumers from this type of false representation and predatory conduct.

## CLASS ACTION ALLEGATIONS

48. Plaintiff seeks relief in his individual capacity and as representative of all others who are similarly situated. Pursuant to Rules 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "Class"):

> All persons who purchased the Products in New York State during the applicable limitations period primarily for personal, family, or household purposes, and not for resale.

49. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

50. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

51. This action is proper for class treatment under Rules 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other members of the Class ("Class Members") are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are hundreds of thousands of Class Members. Thus, the Class is so numerous that individual joinder of all Class Members is impracticable.

52. Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class Members and predominate over any questions affecting only individual Class Members and include:

a. whether Defendant's claims that the Products are made in the USA are deceptive;

b. whether Defendant's deceptive labeling and marketing of the Products violates federal, state and/or common law;

c. whether Defendant engaged in labeling and marketing practices intended to deceive the public by leading consumers to believe that the Products are made in the USA;

d. whether members of the public were likely to be deceived by Defendant's labeling and marketing;

e. whether Defendant received a benefit from Plaintiff and Class Members;

f. whether it would be unjust for Defendant to retain such a benefit;

g. whether Defendant injured Plaintiff and Class Members and the appropriate measure of those damages; and

h. whether punitive damages are appropriate.

53. Plaintiff's claims are typical of those of the Class Members because Plaintiff and the other Class Members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased the Products during the applicable statutory period and sustained similar injuries arising out of Defendant's conduct in violation of New York State and federal law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were

experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class Members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories.

54. Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting consumer fraud class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class Member are too small to make it economically feasible for an individual Class Member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims

asserted herein. There will be no difficulty in the management of this action as a class action.

56. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

57. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

58. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class Members are not parties to such actions.

59. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

60. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

61. Plaintiff brings this claim individually and on behalf of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349.

62. The practices employed by Defendant, whereby Defendant labeled, advertised, promoted, and marketed its products as "Made in the USA" are deceptive and misleading and are in violation Gen. Bus. Law § 349.

63. The foregoing deceptive acts and practices were directed at consumers.

64. As a result of the repeated violations described herein, Defendant received and continues to receive unearned commercial benefits at the expense of their competitors and the public.

65. Plaintiff and the other Class Members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiff and the other members of the Class suffered monetary losses associated with the purchase of the Products, *i.e.*, the purchase price of the product and/or the premium paid by Plaintiff and the Class for said products.

66. On behalf of himself and other members of the Class, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

**COUNT II**

**VIOLATION OF NEW YORK GEN. BUS. LAW § 350**

67. Plaintiff brings this Count individually and on behalf of the members of the Class against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

68. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

69. Defendant's false, misleading, and deceptive statements and representations of fact include, but are not limited to, the representations that the Products were "Made in the USA." Defendant directed these representations to consumers through packaging, labels and other marketing and advertising.

70. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that Handi-foil products were "Made in the USA" are likely to mislead a reasonable consumer acting reasonably under the circumstances.

71. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that Handi-foil products were "Made in the USA" have resulted in consumer injury or harm to the public interest.

72. Plaintiff and the Class Members were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the Products in fact were not made in the USA; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they were not made in the USA.

73. As a result, Plaintiff and the Class Members have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or,

alternatively, the difference in value between the Products as advertised and the Products as actually sold.

74. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that the Products were "Made in the USA", Plaintiff and the Class Members have suffered and continue to suffer economic injury.

75. Plaintiff and the Class Members suffered an ascertainable loss caused by Defendant's misrepresentations because they paid more for the Products than they would have had they known the truth about the products.

76. On behalf of himself and other members of the Class, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of a Class of all others similarly situated, seeks a judgment against Defendant, as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's counsel as Class Counsel to represent members of the Class;

B. For an order declaring the Defendant's conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit;

G. Any other relief the Court may deem appropriate.

**DEMAND FOR TRIAL BY JURY**

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: September 1, 2026

**LAW OFFICES OF**
**ROBERT L. KRASELNIK, PLLC**

By: */s/ Robert L. Kraselnik*

Robert L. Kraselnik (RK0684)
261 Westchester Avenue
Tuckahoe, NY 10707
Telephone: (646) 342-2019
E-Mail: robert@kraselnik.com

**SMITH KRISHOVEY, PC**
Brittany Scott *(pro hac vice)*
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Telephone: (415) 449-8622
E-Mail: brittany@skclassactions.com

*Attorneys for Plaintiff*
*and the Proposed Class*